STATE OF MINNESOTA *ex rel.* George Benz and others *vs.* DISTRICT COURT OF RAMSEY COUNTY.

June 12, 1884.

St. Paul—Street Paving.—The charter of the city of St. Paul authorizes the board of public works to contract for the *partial* paving of a street.

Same—Omission to Assess Street Railway Co.—A street railway company having a double track in a street, and neither the spaces between the rails nor the spaces between the tracks being paved or contracted to be, *held,* that the board of public works might fairly be of opinion that the company was not benefited by the paving of the rest of the street, and therefore properly refrain from assessing the company towards the expense thereof.

Same—Execution of Contracts—Signature of Comptroller.—Section 28, title 1, chapter 7, of the charter, as amended by Sp. Laws 1875, c. 1, § 9, provides that contracts for grading, paving, etc., shall be made on the part of the board of public works in the name of the city of St. Paul, and shall be executed on the part of the city by the president of the board, or such of their members as the board may designate, and the seal of the board shall be thereto attached, and "the said contract shall be countersigned by the city comptroller."   *Held,* that when, upon a proper state of facts, a contract is executed by the contractor with such guaranty as may be

required, and by the president of the board of public works as directed, it is complete as a valid contract between the city and the contractor.

**Same—Compelling Signature.**—In such case, as the comptroller can have no discretion in the premises, his countersigning can be nothing more than a clerical duty, the performance of which can be compelled by the contractor or board.

**Same—Signature after Performance of Contract.**—In such circumstances the failure of the comptroller to countersign until after the performance of the work contracted for, but before the commencement of the proceedings to assess, would be nothing more than a "formal irregularity or defect," such as may be disregarded by the district court, under the provision of section 39, title 1, chapter 7, of the city charter.

*Certiorari.*   The trial in the district court was before *Brill,* J.

*J. B. Brisbin* and *Bigelow, Flandrau & Squires,* for relators.

*H. J. Horn* and *Wm. P. Murray,* for respondent.

BERRY, J.[1]   In this case a writ of *certiorari* was sued out of this court for the purpose of bringing here for review a judgment of the district court of Ramsey county for the amounts of certain assessments made by the board of public works of the city of St. Paul, on account of the paving of Fort street.   Three objections are made to the assessment:

*First,* it is said that there is no authority to contract, as in this case, for the *partial* paving of a street; that is to say, as we understand counsel, for paving so much only of a street as lies outside of the tracks of a street railway laid in the middle thereof.   As the whole subject of paving and grading streets is regulated by the city charter, which contains no restraint or limitation in the respect indicated by the objection, it was properly overruled by the court below. City Charter, *c.* 7, tit. 1, §§ 1, 2, *et seq.* (Sp. Laws 1874, p. 52.)

The second objection is that the street railway company was not assessed for any part of the expense of the improvement.   The company has a double track in the street, and neither the spaces between the rails nor the space between the tracks was paved, or contracted to be.   In this state of facts we agree with the learned trial judge that the question of benefits or no benefits to the company from the

[1] Gilfillan, C. J., because of interest, took no part in the decision of this case.

paving was one "of opinion," and the board of public works might fairly conclude, as it did, that the company was not benefited, and no fraud, mistake, or departure from authority appears to impeach this conclusion.   *State v. Board of Public Works of St. Paul,* 27 Minn. 442; *State* v. *District Court of Ramsey County,* 29 Minn. 62.

The third objection, and that upon which the relators mainly rely in attacking the assessment, is that the alleged contract for paving was not seasonably countersigned by the city comptroller.

Section 28, title 1, chapter 7, of the charter provides that contracts for grading, paving, etc., "shall be made on the part of said board [of public works] in the name of the city of St. Paul, and shall be executed on the part of said city by the president of said board, or such of their members as said board may designate, and the seal of said board shall be thereto attached, and the said contract shall be countersigned by the city comptroller.   A copy of such contract shall be filed in the office of the city comptroller, and registered in a book kept by him for that purpose."   Sp. Laws 1874, p. 63, as amended by Sp. Laws 1875, *c.* 1, § 9, p. 19.

The facts in this case are these:   On July 17, 1882, the contract for the paving in question was duly executed by the contractor.   It was also, at the same time, duly executed on the part of the city by the president of the board of public works, and the seal of the board attached.   These acts were all done before the work of paving was begun.   The contract provided that the work should be completed by October 15, 1882, and that the contractor should forfeit $25 a day for such time as it remained uncompleted after that date.   The work was commenced in August, and continued until the latter part of November, 1882, after which time no work was done,—the contractor claiming that it was finished.   The city has not accepted it or paid the final estimates to the contractor.   The contract was first countersigned by the comptroller in January, 1883, and before the board proceeded to make the assessment, as it did in February, 1883.

Upon this state of facts, the points made by the relators are that "the work, so far as the same has been done, was completed before any contract had been made with the contractor therefor, and was not completed within the time stipulated therefor in the pretended

contract, and was delayed and suspended without cause, to the damage of the relators objecting." As respects the matter of delay and suspension, we need only say that is not only something which the city might waive,—the provision for a forfeiture evidently contemplating this,—but that the power to make an assessment, and the validity of the assessment, do not depend upon the performance of the contract, but upon the fact that the work has "*been placed under contract.*" Charter, c. 7, title 1, § 23, (Sp. Laws 1874, p. 61.)

With reference to the claim that there was no contract until after the work was done, because the comptroller had not affixed his counter-signature, our view is this: The contract in such cases is between the contractor and the city, and, as the charter provides, it is to be "*made,* on the part of the board, in the name of the city of St. Paul, and shall be *executed on the part of said city* by the president of said board, or such of their members as said board may designate, and the seal of said board shall be thereto attached, and said contract shall be countersigned by the city comptroller." In our judgment, when, upon a proper state of facts, (such as we understand to have existed in this case,) a contract is executed by the contractor with such guaranty as may be required, and by the president of the board of public works as above directed, it is complete as a valid contract between the city and the contractor. In such case, as the comptroller can have no discretion in the premises, his countersigning can be nothing more than a clerical duty, the performance of which could be compelled by the contractor or board. At most, it seems to us that in such circumstances the failure of the comptroller to countersign until after the performance of the work, but before the proceedings to assess were commenced, would be nothing more than a "formal irregularity or defect," such as may be disregarded by the district court, under the express provision of section 39, title 1, chapter 7, of the city charter. (Sp. Laws 1874, p. 67.)

This disposes, we believe, of the positions of the relators, and the result is that the judgment brought here is affirmed.