# Mark Construction Co. *v.* Hadley, Controller, et al.

*Municipalities—Cities of first class—City controller—Certification of municipal contracts—Powers of the controller—Act June 25, 1919, P. L. 581.*

1. The powers and duties of a city controller are purely statutory; he cannot properly object to the actions of the other departments of the city government, unless he can point to a statute authorizing him so to do.

2. In numbering and certifying municipal contracts, under the Act of June 25, 1919, P. L. 581, a city controller is acting in a ministerial capacity; if he refuses to number and certify them, he has the burden of showing that his refusal is justifiable.

3. A city controller cannot rightly refuse to number and certify a municipal contract, for any reason which relates to the previously obtaining of the money out of which the contract price has been duly appropriated; his objection, to be available, must relate to some irregularity or wrong inherent in the contract itself.

4. A city controller has no standing to object to the method by which the city borrows the money required by it for municipal purposes.

Submitted September 26, 1927.  Before Moschzisker,
C. J., Frazer, Walling, Simpson, Kephart, Sadler and
Schaffer, JJ.

Appeal, No. 324, Jan. T., 1927, by defendant, from
order of C. P. No. 4, Phila. Co., June T., 1927, No. 14288,
awarding mandamus, in case of F. W. Mark Construc-
tion Co. v. Will B. Hadley, controller.  Affirmed.

Petition for mandamus.  Before Gordon, J.
The opinion of the Supreme Court states the facts.
Mandamus awarded.  Defendant appealed.

*Error assigned,* inter alia, was order, quoting record.

*S. Davis Wilson,* Deputy Controller, Acting Control-
ler P. P. for Will B. Hadley, City Controller, appellant.
—The controller of Philadelphia was justified in the
present instance in refusing to certify the contract of
the plaintiff since, at the time of the contract, the non-
electoral or councilmanic borrowing capacity of the city
had been greatly exceeded, and since the funds from
which the contract price in question was to be paid was
alleged to have been raised by a councilmanic loan: Mc-
Kinnon v. Mertz, 225 Pa. 85; McAnulty v. Pittsburgh,
284 Pa. 304; Kreusler v. McKees Rocks, 256 Pa. 281;
McGuire v. Phila., 245 Pa. 287; Elliot v. Phila., 229 Pa.
215; Schuldice v. Pittsburgh, 251 Pa. 28; Bullitt v.
Phila., 230 Pa. 544; Lesser v. Boro., 237 Pa. 501.

*Joseph P. Gaffney,* for the City of Philadelphia, in-
tervening.—The money having already been borrowed
and received by the city, the city controller may not re-
fuse to charge a contract against the appropriation
thereof because of any alleged irregularity or illegality
in incurring the debt: Com. v. Tice, 272 Pa. 447; Com.
v. George, 148 Pa. 463; Com. v. Phila., 176 Pa. 588;
Com. v. Larkin, 216 Pa. 128; Com. v. Pittsburgh, 204

Pa. 219; Vare v. Walton, 236 Pa. 467; Com. v. Pittsburgh, 206 Pa. 379.

*Morris Wolf*, for appellee.—The city controller has no discretion as to certifying a properly awarded contract payable from an appropriation made by council in proper form where the contract price is within the appropriation applicable thereto, because in his opinion the loan from the proceeds of which the appropriation has been made by council was illegal: ·Vare v. Walton, 236 Pa. 220; Com. v. George, 148 Pa. 463; Com. v. Tice, 272 Pa. 447; Dechert v. Com., 113 Pa. 229.

OPINION BY MR. JUSTICE SIMPSON, June 25, 1927:

The legislative department of the City of Philadelphia, believing that the city had a councilmanic borrowing capacity in excess of $4,200,000, authorized the making of a councilmanic loan to that extent, for, inter alia, the obtaining of money "to be used toward the erection, construction, improvement and equipment of the City Hall Annex." The loan was made; its amount was paid to the city; the lender was given a temporary receipt, pending the preparation of the bonds; and the money is still on hand, awaiting distribution for the various purposes for which it was borrowed.

In due course, the city advertised for bids for the completion of the annex, and awarded the contract to plaintiff, as the lowest responsible bidder, and appropriated, out of the fund realized from the $4,-200,000 loan, a sum sufficient to pay the contract price. A formal contract was executed by the city officials and the contractor, but the city controller refused to number or certify it, as he is required to do by article XII, section 4, of the Act of June 25, 1919, P. L. 581, 598, which provides that "Every contract involving an appropriation shall designate the item on which it is founded, and shall be numbered by the city controller in the order of its date, and charged as numbered against such item,

and so certified by him, before it shall take effect as a contract, and shall not be payable out of any other fund." Plaintiff thereupon began the present proceeding to compel the controller to number and certify the contract; he answered the petition; plaintiff demurred; the demurrer was sustained and a peremptory mandamus awarded. From this judgment the controller now appeals.

Appellant does not challenge the good faith of, or the method pursued by plaintiff, or the city officials, in the making of either the councilmanic loan or the building contract, but confines his objection to the alleged fact that, without the consent of the electors, which was not given, the city had no right to make the loan of $4,-200,000. For present purposes, we may assume, without considering or deciding the point, that appellant is correct in his contention; but it is a wholly irrelevant matter in this proceeding. The Constitution limits the right of a city in borrowing money without the consent of the electors, but it gives to city controllers no power or duty in respect to that matter. To have any standing to attack the loan, appellant was bound, therefore, to point to some statute authorizing him, as controller, so to do. The only statutory provision to which he refers us is section 2 of article XVII of the Act of June 25, 1919, P. L. 581, 606.

Section 1 of that article requires the controller to annually furnish to the mayor, who, in turn, must forward to councils, a statement of the estimated receipts, "including money proposed to be borrowed," and the "estimated expenditures for such year of all departments, officers, boards, commissions, trusts, committees or other agencies, whose financial requirements are to be met out of the proceeds of taxes levied by the council or out of any other funds over which the council has control, designating which of such liabilities and expenditures shall be met from current receipts, and which shall be met from loan funds......He shall also furnish to the

mayor [without any requirement that it shall be sent to council] a statement of the borrowing capacity of the city." Section 2 then provides that, after a public hearing, councils shall "in one ordinance......adopt a financial program for the ensuing year, showing the estimated receipts from all sources, the liabilities of every kind, and the amount and character of expenditures to be made by such departments, officers, boards, commissions, trusts, committees, and other agencies during the ensuing year. In passing such ordinance the council shall be bound to accept the estimates of receipts and liabilities furnished to the mayor by the city controller, but shall have full discretion to determine the character and amount of expenditures to be made out of the estimated receipts of the city during the ensuing year." So far as appears, all that this statute requires was duly done; but, it will be observed, there is nothing in the section which imposes any further duty on the controller, after he has furnished "the estimates of receipts and liabilities," or which, indeed, limits the power of the city council to borrow other money than that referred to in the controller's estimates, and to use it for any legitimate municipal purpose, which, admittedly, constructing and equipping the City Hall Annex is. Appellant is, therefore, without statutory support in the position he assumes.

To further sustain his contention he points to certain decisions of this court, which hold that, on some subjects, his acts cannot be coerced by mandamus; but all of them, when attentively considered, are antagonistic to his view. Thus, in Com. ex rel. v. George, 148 Pa. 463, the court below held, in a case in all essential respects like the present, that the city controller could be mandamused to number and certify proper municipal contracts; that in such matters his duty is ministerial and not discretionary; and, if he denies he is required so to do in the particular instance, he must set forth, in his return, legal reasons justifying his denial. We "af-

firmed on the opinion of the learned judge below."
Here, legal reasons have not been given.

In Com. ex rel. v. Phila., 176 Pa. 588, 592, we said:
"He [the controller] is not intrusted with the duty of
making or even of supervising the contracts of other
departments. He is the city's head bookkeeper, and his
office is to see that the various departments do not ex-
ceed their appropriations, nor apply them to purposes
not within their proper scope. To this end he is clothed
with very large powers of examination and investiga-
tion, and a large measure of discretion, but they do not
extend to the revision of lawful contracts made by other
departments within their proper sphere."

In Com. ex rel. v. Larkin, 216 Pa. 128, where the con-
troller's answer charged collusion in connection with the
bidding, which resulted in awarding to relator the con-
tract in dispute, we said at page 129: "If the contract
be on its face regular, and the requirements of the stat-
utes in connection therewith have been fully met, the
controller is without choice in the matter; it becomes at
once his duty in such cases to number the contract ac-
cording to its date, charge it against the proper item of
appropriation, and certify it accordingly. No opinion
or so-called discretion of the controller can justify him
in withholding his certificate from such a contract."
And again, at pages 131-2: "No more can the collusion
charged in connection with the bidding [for the con-
tract] be made the subject of inquiry in this proceeding.
The one question in the case is, shall the controller be
required to certify this contract? It is his duty to cer-
tify all municipal contracts which have been entered
into under and in compliance with statutory require-
ments. We have said this is such a contract. The fraud
alleged does not go to the regularity of the contract—
and by regularity we mean conformity to the positive
requirements of the statute. The powers and duties of
the controller are purely statutory; and, when one hold-
ing the office asserts the right to avoid or ignore a duty

plainly enjoined, nothing can vindicate such right short of a statutory provision equally explicit with that which enjoins the duty. If the facts with respect to the collusion be as stated in the answer, they furnish sufficient basis for a proceeding at the suit of the city or of a defrauded taxpayer to set aside the contract, as was done in Mazet v. Pittsburgh, 137 Pa. 548. ......but until the contract be judicially declared illegal by reason of the alleged fraud, it is not for the controller to assert its invalidity in justification of a refusal on his part to certify a contract which stands clear of all other objection."

The same conclusion is stated in Vare v. Walton, 236 Pa. 467, and Com. ex rel. v. Tice, 272 Pa. 447, and it has never been doubted by us. It is clear, therefore, that appellant, as city controller, has no standing to challenge, in this proceeding, the right of the city council to make the $4,200,000 loan without the consent of the electors.

The judgment of the court below is affirmed.