[Civ. No. 4612.   Third Appellate District.—February 6, 1932.]

JULIA ADAMS BALDING et al., Petitioners, v. HARVEY D. EICH, as Treasurer, etc., Respondent.

Snook & Snook & Chase for Petitioners.

Erling S. Norby for Respondent.

PLUMMER, J.—This cause is before us upon an application of the above-named petitioners praying that a writ of mandate be issued from this court directed to Harvey D. Eich, as treasurer of the Bond Fund of Reclamation District No. 784, located in the county of Yuba, ordering and commanding proceedings to be taken by him in the collection of funds from the land owners in said reclamation district to pay interest and principal due on bonds of said district.

The petition shows that during all the times mentioned herein, Reclamation District No. 784 was a duly organized and existing district under the laws of the state of California, situate in the county of Yuba, and including within its exterior boundaries some 14,000 acres of land. The petition further sets forth that on or about the first day of November, 1920, an assessment was duly levied upon the lands of said district in the manner provided by law, for the total sum of $897,427.39. This sum remaining unpaid the board of trustees of said reclamation district, pursuant to the law regulating reclamation districts, proceeded to issue bonds, dating such bonds on the first day of January, 1921, and thereafter, of such bonds, the principal sum of $834,000 were sold.

The petition further shows that the defendant in this action is the treasurer of the county of Yuba, and trustee of the Bond Fund of Reclamation District No. 784. The bonds just referred to as issued and sold bore interest at the rate of six per cent per annum, payable semi-annually, to wit, on the first day of January of each year and on the first day of July of each year. Of said issue, bonds in the sum of $97,000 were to become due and did become due on the first day of January, 1930. This issue of bonds was known, and is referred to herein, as "Series No. 1". Thereafter, bonds in the principal sum of $90,000 of the issue referred to became due on the first day of January, 1931, being known as "Series No. 2". Issue of said bonds known as "Series No. 3", in the sum of $90,000, were to become

due, and will become due, on the first day of January of each succeeding year.

The petition further sets forth that Julia Adams Balding is the owner and holder of bonds in the sum of $10,000 of series No. 1; bonds in the principal sum of $2,000 of series No. 2; and that E. M. Price is the owner and holder of a bond in the sum of $1,000 of series No. 3.

It is further alleged that the interest on the bonds owned by Julia Adams Balding, of series No. 1, has been paid up to the first day of July, 1929, and no further, and that neither said principal of said bonds, or any part thereof, nor interest subsequent to the first day of July, 1929, has been paid. Interest on the bonds owned by the petitioner, Julia Adams Balding, known as series No. 2, has been paid up to the first day of July, 1929, and no further; that nothing has been paid on the principal sum of any of the bonds owned by the petitioners herein; that on the bond owned by E. M. Price, interest has been paid up to July 1, 1929, but no further.

It is further alleged that each and all of said bonds are fully due and payable, and after the same became due were presented to the respondent for payment, and payment refused.

The petition further sets forth that the respondent, pursuant to the law governing such proceedings, prior to the first day of October, 1929, estimated the amount of money necessary to be raised to pay the interest on the total bonds issued and outstanding, as above set forth, and also the principal sum thereof maturing on January 1, 1930, adding thereto fifteen per cent to cover possible delinquencies, and caused notice thereof to be given as provided by law, the various items aggregating the total sum called for by said respondent being set forth in the petition.

It is further set forth in the petition that the respondent prior to the first day of October, 1930, estimated the amount of money necessary to be raised to pay the interest on the total bonds issued and outstanding as above set forth, save and except the bonds maturing under series No. 1, maturing on January 1, 1931, with the additional sum of fifteen per cent to cover possible delinquencies, and caused notice to be published in a newspaper of general circulation as required by law.

It is further set forth in the petition that thereafter, and on or about the first day of October, 1931, the respondent again estimated the amount of money necessary to be raised to pay interest on bonds outstanding, except bonds of series Nos. 1 and 2, theretofore matured, and also the principal sum of the bonds maturing January 1, 1932, adding thereto, as required by statute, fifteen per cent to cover possible delinquencies, and thereafter published notice thereof in accordance with law.

It further appears from the petition that in the making of various estimates of the moneys necessary to pay the maturing bonds and the interest upon the outstanding bonds, as hereinbefore referred to, the respondent erred in adding to his estimates the costs and expenses of publishing the notices referred to, and that proceedings have been taken and had in the Superior Court of Yuba County by certain land owners whose lands were subject to assessment, contesting the validity of the calls hereinbefore referred to, and that judgments have been entered to the effect that the calls referred to are and were invalid by reason of the errors in the estimates, and that the sale of lands thereafter had by reason of the failure of land owners to pay their assessments under the calls referred to herein, are ineffective.

It further appears that while a few of the land owners owning lands in said reclamation district have paid the assessment levied upon their lands, a large number have allowed the assessments to go delinquent, and by reason of the fact that the estimates, calls and sales on account of delinquencies, are each and all ineffective for the reasons stated, nothing is being paid, and nothing is being collected by the respondent as trustee of the bond fund of said district, nor is any action being taken by him to enforce payment, or to make a valid sale of the lands and premises situated within the exterior boundaries of said district and subject to such payments on account of delinquencies in making such payments.

It is further set forth that the respondent declines to take further action, or to take any action toward making a valid sale of the lands and premises within said reclamation district upon which assessments are or may become delinquent; likewise, said respondent declines to make any further estimate of the amounts necessary to be raised to

pay the principal and interest due on said bonds, and that will become due on the first day of July, 1932, unless required so to do by the order of this court.

In addition to what we have stated the petitioners ask a decree of this court directing the respondent to proceed to estimate, according to law, the amount that will be required to pay the principal and interest due on said issue of bonds as and of the date of July 1, 1932, and thereafter proceed to make valid sale of all and singular the lands and premises upon which there may be delinquencies in making payment.

The petition sets forth, all and singular, the different items specifying the amounts to which we have referred but which it is unnecessary for us to give in detail, asking further that the respondent be restrained from paying out any funds that may be in his hands belonging to the bond fund of said district, until the proceedings herein referred to have been taken and had, other than may be necessary to pay the costs of whatever actions may be necessary to insure payment of the amount that may be estimated as due.

The record shows that a judgment has been entered validating the bonds herein referred to, and hence their validity is not before us for consideration. It likewise appears that the proceedings hereinbefore referred to have all been taken and had in an attempt to comply with the provisions of section 3480 of the Political Code. As stated, the validity of the bonds having been determined, all the provisions of that section relating to assessments, calls, publication of notices, collection of amounts due, and proceedings in the event of delinquencies, are applicable to this cause.

By reason of the provisions of one of the paragraphs of section 3480 of the Political Code, the lien upon the lands for unpaid assessments continues until the bonds are paid, and in this case all of the sums referred to by the petitioner as due on account of principal and interest on the bonds issued by said district, constitute an enforceable lien against the lands lying within the exterior boundaries of the district in proportion to the amounts chargeable against each particular tract therein.

We do not deem it necessary to cite authorities to the effect that the validity of the bonds or the lien created

upon the lands within the district by virtue of the provisions of section 3480 of the Political Code are in nowise affected by the failure of the respondent to make a valid sale of lands against which delinquent payments are chargeable. In other words, the lien exists until the bonds are paid, and the duty of the respondent to take legal proceedings to enforce payments exists until such proceedings have been taken and had.

In the case presented the acts to be taken by the respondent are purely ministerial. The amount necessary to be raised to pay the sums due as principal and interest on account of said bond issue is a matter of mere calculation requiring no exercise of discretion. Under such circumstances the text found in 16 California Jurisprudence, 806, applies: "If the facts exist and are established by proof, it is the officer's duty to be satisfied and to perform the act. Thus the writ lies to compel an officer to perform an official duty in respect to the delivery or distribution of funds in his possession. And officers charged with the duty of signing valid bond issues of municipalities, irrigation districts, etc., may be compelled by the writ to perform such duty in event of their refusal so to do." Likewise, as said on page 854 of the same volume: "A tax payer may by *mandamus* compel the performance of a duty imposed upon a municipal body, such as advertising for bids for lighting streets, the mode of performing which is specifically pointed out."

A case somewhat similar in principal is that of *Hewel* v. *Hogin*, 3 Cal. App. 248 [84 Pac. 1002], where an application for a writ of mandate, commanding the defendant as treasurer of Modesto Irrigation District, to pay interest on certain bonds, was granted and the respondent directed to pay interest on the coupons presented, it being found that the treasurer had sufficient funds in his hands to make payment. The plaintiff in that case being a party beneficially interested had a right to the process of the court in enforcing the performance of a ministerial act on the part of the defendant.

While section 3480 of the Political Code does not specifically point out any proceeding to be taken by the trustee of the bond fund of the reclamation district in the event of an invalid sale, the section does as we have stated, specifically make the bonds a lien upon the lands of the

district until they are paid. From which it necessarily follows that the person who is charged with the collection of the moneys necessary to make payment is likewise charged with the duty of taking legal proceedings to effectuate such purpose, and that his duty to do so is not performed by taking proceedings which turn out to be illegal. The duty not having been performed, the one so charged with the performance of the duty is still under an existing obligation to go forward and make a legal estimate of the amount or amounts that may be due, give notice thereof, and unless payments are made, proceed to make sale of all lands where the owners are delinquent in making payment.

As bearing upon the questions here involved, we may cite the case of *Meyer* v. *Porter*, 65 Cal. 67 [2 Pac. 884, 885], a proceeding to compel a city treasurer to pay interest on certain bonds as they fell due. In the opinion in that case it is said: "If, therefore, it was the clear legal duty of the treasurer to do the act demanded of him, performance of it can be compelled, and the only question is, was it the duty of the treasurer to pay the coupons when presented to him, out of the funds which he had on hand?" It appearing in that case that there were funds in the hands of the treasurer to make payment, it was held that the petitioner was entitled to the writ of mandate.

To the same effect is the case of *Meyer* v. *Widber*, 126 Cal. 252 [58 Pac. 532].

The facts set forth in the petition show that there is sufficient time existing between now and the 1st of July, 1932, for estimating the amount that will be due on that date, and giving notice thereof in the manner, and for the time provided by law, and no confusion will result as appears in the case of *McDonald* v. *Richards*, 79 Cal. App. 1 [248 Pac. 1049], where the court had before it a petition for a writ of mandate directing the levy of a tax, and the writ was denied for the reason that time to comply therewith and give the necessary notices provided by law, did not exist.

In support of the authority of the court to direct action to be taken to collect funds to pay the principal and interest on the bonds becoming due on the first day of July, 1931, even though the provisions of the Political Code may be somewhat ambiguous, lacking in specific directions, or failing

to point out that a resale should be made where prior sales have been held invalid, we may cite not only the cases which we have mentioned, but also the cases of *Roche* v. *Superior Court,* 30 Cal. App. 255 [157 Pac. 830], where it was held that an election contested should not fail for want of legal procedure laid down in the code; also, *Potomac Oil Co.* v. *Dye,* 14 Cal. App. 674 [113 Pac. 126, 130], where *mandamus* was applied to compel action by corporate officers. See, also, *Comstock* v. *County of Yolo,* 71 Cal. 599 [12 Pac. 728]. Other cases might be cited, but we think it is a self-evident proposition that the failure of an officer to act where his action is purely ministerial, does not affect the rights of interested parties to have correct proceedings taken, and in this case the petitioners being the holders of bonds issued by the district which constitute valid and subsisting liens upon the lands and · premises lying within the exterior boundaries thereof, have an indefeasible right to payment, and any proceedings consistent with preserving the rights of all the parties and giving due notice of the time when payment should be made and the amounts due, may be ordered by the court, and that authority so to do is conferred not only by the cases which we have cited, but also supplemented by the provisions of section 187 of the Code of Civil Procedure.

The writ of mandate herein is ordered issued, as prayed for by the petitioners, but as a long list of dates and figures are involved, counsel for petitioners are hereby directed to prepare the necessary orders and writs to carry into effect the prayer of the petition hereby granted.

Thompson (R. L.), J., and Preston, P. J., concurred.