Opinion
LAZARUS, J.*
Plaintiff William A. Slater was employed at the San Francisco General Hospital prior to October 26, 1970, with a civil service job classification as a “2801 -Community Health Aide.” A few days before that date another employee, Cyrus Carter, who was classified as a “2120-Institutional Admitting Officer” had resigned from his position. The salary for his job was $288 per month more than the rate of pay for a health aide.
Before Carter left his job, there were two members of the hospital staff classified as admitting officers. On October 3, 1970, after Carter had notified the hospital that he intended to leave, a request from the hospital personnel office for leave to fill this vacancy was denied because the position had not been funded and the job was declared “frozen.” However, on October 26, 1970, Slater was assigned by his superior, George Szol, senior management assistant, county mental health clinic, to perform the duties of a 2120-Institutional Admitting Officer. Ever since that date he continued to perform the duties of the higher position in obedience to the orders he had received from his boss.
Appellant San Francisco City and County Service Employees International Union Local 400, AFL-CIO, of which Slater was a member, wrote to the civil service commission on February 2, 1971, requesting that Slater be paid the salary of an admitting officer, to be retroactive covering the period commencing 30 days after he assumed such duties, and continuing until July of 1971, when he was regularly promoted to his permanent position as a 2120-Institutional Admitting Officer. Although the commission did issue an order on December 27, 1971, purporting to *275 grant this request, respondent Dr. Francis Curry, as head of the department of public health, refused to budget the item, and respondent Nathan A. Cooper, the City and County Comptroller, refused to pay it. Hence, Local 400 thereafter joined with Slater in petitioning the superior court for a writ of mandate seeking to command the city to pay to Slater the added compensation that he seeks in this action. This appeal is from the lower court’s judgment entered on November 9, 1973, denying the petition.
The sole question presented here is therefore as to whether or not Slater has a legally enforceable claim for back pay.
Appellants base their claim largely on section 7 of rule 24 of the rules and regulations of the civil service commission, adopted pursuant to the rule-making powers conferred on the commission by section 141 of the Charter of the City and County of San Francisco. They earnestly contend that rule 24 entitled Slater to the full pay of an admitting officer while performihg the duties of that office, since he performed the functions pertaining thereto for a period longer than 30 days under the directions of his superior officer.
The city’s response is that rule 24 applies only to a “temporary assignment” to duties outside an employee’s civil service classification, and that no such “temporary assignment” can be lawfully made for more than 30 days. But even if it were otherwise, the city asserts, since Slater was not legally appointed as a 2120-Institutional Admitting Officer in accordance with the requirements of the city’s salary ordinance, he could in no event claim the emoluments of that office.
Before reaching these contentions on their merits, it will first be necessary to refer to other aspects of this case appearing from the following findings of fact of the trial judge: “1. Between October 26, 1970, and July 1, 1971, petitioner, William A. Slater, was employed by the City and County of San Francisco as a 2801-Community Health Aide, [f] 2. The Department of Health did not request that William A. Slater be promoted to the position of 2120-Institutional Admitting Officer prior to July 1, 1971. [If] 3. Neither the Mayor nor the Civil Service Commission approved promotion of William A. Slater to the position of 2120-Institutional Admitting Officer prior to July 1, 1971. [H] 4. Between October 26, 1970, and July 1, 1971, no funds of the City and County of San Francisco were available to employ William A. Slater *276 as a 2120-Institutional Admitting Officer. [If] 5. At no time did the Controller certify that funds were available to employ William A. Slater as a 2120-Institutional Admitting Officer prior to July 1, 1971. [If] 6. Between October 26, 1970, and July 1, 1971, petitioner, William A. Slater, was not employed by the City and County of San Francisco as a 2120-Institutional Admitting Officer.”
Since this appeal is taken on the clerk’s transcript alone, the record before us consists of only the judgment, findings of fact and conclusions of law, and the pleadings. (Millbrae Assn, for Residential Survival v. City of Millbrae, 262 Cal.App.2d 222, 226 [69 Cal.Rptr. 251].) And the sufficiency of the evidence to support the findings is not open to review. (Wheelright v. County of Marin, 2 Cal.3d 448, 454 [85 Cal.Rptr. 809, 467 P.2d 537].)*
We now turn to section 7 of civil service commission rule 24, which provides in part, “ ‘Temporary assignment’ means an assignment to duties not normally included in the classification to which the employee is regularly appointed without change in classification or pay of the employee so assigned, as distinguished from ‘temporary appointment’, which for the purposes of this section refers to an appointment to a differently classified position in accordance with civil service, budgetary, and fiscal provisions. [If] A temporary assignment shall be defined as any assignment that does not continue beyond thirty calendar days except as otherwise provided herein. ... [If] When it is known that temporary services are required for a period in excess of thirty calendar days, then a temporary appointment shall be made. [If] When a temporary assignment is made and a thirty calendar day period from the beginning date of assignment to the position has elapsed, and it is then determined that further temporary service in such position is required, then temporary assignment of another employee to such position will not be authorized and, except as otherwise provided herein, the temporary assignment shall be void and a temporary appointment shall be made for the remaining duration of the required service.” (Italics added.)
Thus, the rule recognizes the distinction between one who works on a “temporaiy assignment,” which cannot be for more than 30 days, and a “temporary appointment” to a position where the expected services are to last more than 30 days.
*277 Section 1.2 of the Annual Salary Ordinance of the City and County of San Francisco for 1970-1971 provides, however, that a temporaiy appointment cannot be made unless the mayor “. . . shall approve the requisition for such service as herein provided.” The same section also provides that before a temporary appointment may be made that the controller must certify that the funds are available to pay for the temporary appointment.
An early case, Nash v. City of Los Angeles, 78 Cal.App. 516 [248 P. 689], involved a city employee whose grievance was similar to that of the appellant here. He sued the city for additional compensation for services rendered as a municipal employee, basing his claim upon both contract and quantum meruit. He alleged in his complaint that although he was employed under the civil service classification of “senior cost accountant” he was actually required for a period of time to perform the duties of “chief cost accountant” and was entitled to be paid as such. However, it did not appear from his pleading that he was appointed, certified, or promoted to the higher position in the manner prescribed by the civil service provisions of the city charter. A judgment of dismissal in the lower court, following the sustaining of a demurrer to his complaint was affirmed on appeal. Both of the theories relied upon by Nash for a recovery were rejected for reasons that are just as applicable here. “[WJhere the charter or the statute prescribes the method by which appointments or assignments to particular positions provided for under municipal government shall be made, it is an essential condition to a recovery of the salary annexed to such positions that the prescribed method of appointment or assignment be followed; and where it is not followed no action on quantum meruit will lie against the municipality upon the theory that the party seeking to recover said salary acted in the capacity and performed the services of such position. [Citations.] The rule is grounded mainly upon the proposition that the right to receive the salary is an incident which attaches itself to the legal title to the office and not to its occupation and exercise.” (Id., at pp. 519-520.) This rule has been reiterated and followed. “Employees of a chartered city, such as the City of Los Angeles, are entitled to such pay, and only to such pay, as the city charter and ordinances enacted thereunder provide.” (Los Angeles Fire & Police Protective League v. City of Los Angeles, 23 Cal.App.3d 67, 77 [99 Cal.Rptr. 908]; see also Youngman v. Nevada Irrigation Dist, 70 Cal.2d 240, 246 [74 Cal.Rptr. 398, 449 P.2d 462]; Ticknor v. City of Sacramento, 80 Cal.App.2d 284, 289 [181 P.2d 893] [“ ‘The methods prescribed by charter for the making of appointments in *278 the civil service are mandatory and controlling.’ ”]; Campbell v. Board of Civil Service Comrs., 76 Cal.App.2d 399, 404 [173 P.2d 58]; Heard v. Board of Administration, etc., 39 Cal.App.2d 685, 695 [104 P.2d 47].)
Appellants’ hopes for success in connection with this appeal seem to depend heavily on two cases, Flora Crane Service, Inc. v. Ross, 61 Cal.2d 199 [37 Cal.Rptr. 425, 390 P.2d 193], and Tevis v. City & County of San Francisco, 43 Cal.2d 190 [272 P.2d 757]. Whatever value these decisions may have as authority elsewhere however, neither is in point here.
In Flora, the plaintiff was a successful bidder who was given a contract to demolish five city-owned buildings for a street widening project. Everything was done, including a valid appropriation for the expenditure, and unencumbered funds were available to pay it, but the controller neglected to so certify. The crane company thereupon brought this mandamus proceeding to take the steps set forth in the city charter to certify the availability of funds for payment. Thus in Flora all the legal steps necessary for the formation of a contract with the City and County of San Francisco had been complied with except for the formal certification of available funds by the controller. The court held that under these circumstances the controller was merely being called upon to perform a ministerial duty, and that he could be compelled by mandate to certify that sufficient unencumbered funds had been appropriated. (Flora Crane Service, Inc. v. Ross, supra, 61 Cal.2d 199 at p. 205.) “To permit the city to prevail in the circumstances established here,” the court said, “would reward it for its own neglect.” (Id., at p. 209.) However, the court was careful to note that if there had been insufficient funds to pay the amount due when the plaintiff sought the certification, the city would be under no contractual liability for the work performed. (Id., at p. 209.) In the instant case the mayor had riot approved the requisition for plaintiff to be appointed as an admitting officer; there were no funds to pay plaintiff; nor did the controller certify that there were sufficient funds. Thus Flora is readily distinguishable from the case at bar.
In Tevis the court was concerned only with the interpretation of a charter provision having to do with vacation pay for municipal employees. The question at issue was whether it should apply retroactively for the benefit of city employees whose employment had been terminated *279 before it became effective. We find nothing in that decision that can be of any help to appellants.
While it may be of little solace to Slater to say that he undoubtedly may have relied in good faith on the representations of his superior, this does not entitle us to set aside the safeguards contained in the Charter of the City and County of San Francisco.
Judgment affirmed.
Sims, Acting P. J., and Elkington, J., concurred.

Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

This, of course, includes, inter alia, the findings that between October 26, 1970, and July 1, 1971, no funds of the City and County of San Francisco were available to employ William A. Slater as a 2120-Institutional Admitting Officer.