[No. G009757. Fourth Dist., Div. Three. Nov. 15, 1991.]

AUDREY T. MORTON, Plaintiff and Appellant, v.
BOARD OF REGISTERED NURSING, Defendant and Respondent.

COUNSEL

Lawrence A. Morse for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Susan Fitzgerald and Margaret Lafko, Deputy Attorneys General, for Defendant and Respondent.

OPINION

JACKMAN, J.,*—

The Board of Registered Nursing disciplined Audrey T. Morton for unprofessional conduct by revoking her license, staying revocation, and placing her on probation for one year, subject to ten enumerated terms and conditions. Morton challenged the discipline in a petition of writ of mandate to the superior court, ostensibly per Code of Civil Procedure section 1085. The board argued Morton could seek relief only under the provisions of Code of Civil Procedure section 1094.5 and that her petition was filed too late.

The superior court rejected the board's contentions, but determined the discipline was not in excess of its statutory authority. The court denied Morton's petition on the merits. We find the board's procedural arguments dispositive and affirm.

I

In 1985, the Board of Registered Nursing filed a multicount accusation against Morton. The allegations arose from her ownership and operation of two licensed board and care homes.[1] An administrative law judge determined three allegations should be sustained. The board did not adopt the

---

*Judge of the Orange Superior Court sitting under assignment by the Chairperson of the Judicial Council.

[1]Before the Board of Registered Nursing levied accusations against Morton's license as a registered nurse, the State Department of Social Services, Community Care Licensing Department, investigated complaints concerning her operation of the homes. Morton did not contest that agency's allegations, and she surrendered her facility licenses.

hearing officer's findings, but held an independent review. Nevertheless, it reached the same result as the administrative law judge and revoked her registered nursing license, effective July 6, 1988.

Morton did not seek a stay of the revocation. She petitioned the superior court for a writ of administrative mandate. It was granted in part; the court determined substantial evidence supported but one of the charges and remanded the matter to the board for reconsideration of the appropriate discipline. Morton accepted the superior court decision and did not appeal.

On remand, the board again revoked Morton's license, "provided, however, that said revocation is stayed and [Morton] is placed on probation for one year under [ten enumerated] terms and conditions."[2] The board's order further provided that "[u]pon full compliance with the above terms and conditions and upon expiration of the stay order herein set forth, [Morton's] license shall be fully restored, free and clear of the terms and conditions imposed. [¶] If, during the period of probation, [Morton] violates any of the terms of probation, the Board, after notice to [her] and an opportunity to be heard, may in its discretion set aside the stay order and direct that the order of revocation become effective[] immediately, or make such other order as it may deem appropriate."

The decision, rendered July 31, 1989, was originally slated to be effective on August 31. Before then, however, Morton complained to the board that the penalty was excessive. The board treated her letter as a petition for reconsideration and denied it on September 29, 1989. In that order, the board rescheduled the effective date for its decision to October 13, 1989.

On November 30, 1989, Morton filed an "EMERGENCY PETITION FOR WRIT OF MANDATE AND REQUEST FOR STAY OF ENFORCEMENT OF PENALTY." She asked for an immediate stay of the impending order that she report to her probation officer. She also sought a court order directing the board "to strike its order imposing probation . . . [and] to reinstate [her] license as a registered nurse."[3]

---

[2]The ten conditions included the following: obedience to state and federal laws and state nursing regulations; compliance with the board's probation program, including personal meetings with representatives and submission of written reports and completion of nursing courses approved by the board; an obligation to engage in the practice of nursing in California under board supervision for at least six months of the one-year probation period; and a prohibition against employment with a nurses' registry or as a supervisor or nursing instructor.

[3]Morton's substantive allegations were contained in paragraphs XII and XIII of her petition. In the former, she alleged the 1988 revocation (the one the superior court overturned) and the board's failure to stay its action (presumably the latest discipline) "constitute[d] a

The board argued the petition was untimely. Per Government Code section 11523, her petition could only be for administrative mandate and must have been filed within 30 days of the effective date of the board's order. Because she petitioned for reconsideration, the effective date became October 13, 1989. Accordingly, her petition was required to be filed no later than Monday, November 13, 1989.

The superior court determined the petition was properly and timely filed under Code of Civil Procedure section 1085 and Government Code section 11523 did not apply. Nevertheless, the judge concluded Business and Professions Code section 2759 gave the board authority to discipline Morton and "Government Code [s]ection 11522 expressly authorize[d] [the board] to impose condition[s] on a license."

Both sides appealed. Morton characterizes the issue as follows: "[T]his appeal does not attempt to test or review any act of discretion exercised by the BOARD or [] the finding by the BOARD which was upheld [in the first superior court writ petition]. This appeal *merely seeks to raise the legality of the combined penalties assessed against [Morton]*. This legality must be determined in the context of the statutory authority given to the BOARD by the Legislature and the interpretations placed upon this grant of authority." (Italics in original.) She adds, "The [board's] failure to take into consideration the previously imposed penalty [the 1988 revocation that was reversed by the superior court] is a failure to perform a ministerial duty. There is nothing in this omission which can be said to involve discretion on the part of the BOARD." The board, while satisfied with the trial court's result, challenges the path it took. For the following reasons, we agree with the position taken by the board.[4]

---

ministerial function of the Board and may be corrected by [the superior court]. Said failure of the Board to stay its July 1988 revocation order also constitutes the imposition of a penalty which commenced on the date of the Board's order." In the latter paragraph, she added she "suffered the penalty of revocation of her nursing license on July 6, 1988 based on three accusations, two of which were found to be unsupported by sufficient evidence, and will now continue to suffer the added penalty of a one-year probation when it was the ultimate determination of the Board that the single violation which was arguably supported by evidence warranted only probation as opposed to revocation which petitioner has suffered."

[4]Because Morton purported to appeal only from the imposition of a one-year probation period, which expired on October 13, 1990, it appeared this court could not render any relief and the appeal might be moot. In its reply to our query on the subject, the Attorney General offered no opinion as to mootness. Morton defended continued prosecution of the appeal on the basis that because she refused to comply with the terms of her probation, her license has now been revoked.

It is perhaps worth noting that Morton petitioned this court for a writ of supersedeas on November 19, 1990, seeking to forestall the probation revocation hearing. There she argued, "[p]roceeding with a probation revocation hearing while the issue of the propriety of the

## II

In determining the board properly placed Morton on probation, the superior court cited Government Code section 11522, which expressly permits the imposition of conditions on the reinstatement of a nursing license after suspension or revocation. Although the parties' debate concerning the section has been spirited, both sides essentially agree the provision has no application in this case. We concur in that conclusion.

Government Code section 11522 is not triggered unless a nurse "whose license has been revoked or suspended petition[s] the agency for reinstatement or reduction of penalty after a period of not less than one year has elapsed from the effective date of the decision or from the date of the denial of a similar petition." Neither of Morton's superior court writ petitions fell within the purview of this section. It has no direct application here.

## III

The board's *power* to discipline is conferred by Business and Professions Code section 2750: "Every certificate holder or licensee . . . may be disciplined as provided in this article. The proceedings under this article *shall* be conducted in accordance with Chapter 5 (commencing with Section 11500) of . . . the Government Code, and the board shall have all the powers granted therein." (Italics added.) Business and Professions Code section 2750 is a specific statute directed to a specific agency; its mandates control over the more general provisions found elsewhere in this state's statutory scheme. And what section 2750 requires is that disciplinary proceedings involving registered nurses "be conducted in accordance with" Government Code section 11500 et seq.

Government Code section 11523 governs judicial review of board actions. It succinctly and unambiguously explains, "[j]udicial review may be had by filing a petition for a writ of mandate in accordance with the provisions of the Code of Civil Procedure, subject, however, to the statutes relating to the particular agency. Except as otherwise provided in this section, any such petition shall be filed within 30 days after the last day on which reconsideration can be ordered. . . ." The parties have not referred us to any statute relating to the Board of Registered Nursing that alters the 30-day requirement.

Per Government Code section 11521, the board's last day to order reconsideration was "the date set by the agency itself as the effective date of the

imposition of probation is before the appellate court *will render petitioner's appeal meaningless.*" (Italics added.) She has obviously changed her mind.

The Attorney General previously asked that any information concerning revocation of Morton's probation be stricken. It is relevant to the mootness issue, however, and will be considered for that purpose only.

decision if that date occurs . . . at the termination of a stay . . . ." Here, the effective date was originally August 31, 1989. The board stayed execution, however, to consider Morton's request for reconsideration. The September 29, 1989 order denying reconsideration specified the decision would become effective October 13. Accordingly, per Government Code section 11523, a petition for judicial review was required to be filed in the superior court no later than November 12, 1989.

Morton missed the deadline by more than two weeks. Her petition was not timely. It should have been denied on that basis.

 ██ ██ In an attempt to avoid the unavoidable, Morton argues her petition (which she characterized as a challenge to the legality of the board's action, as opposed to an attack on a discretionary act by the board) sought traditional mandate under Code of Civil Procedure section 1085, instead of administrative mandate per Code of Civil Procedure section 1094.5.[5] For that reason, she contends, Government Code section 11523 and its 30-day time limit did not apply.

But simply calling a goose a duck will not make it quack. Traditional mandate may apply to review an agency's action if that action is compelled by law and does not involve a factual determination by the agency.[6] Under that circumstance, "[r]evocation . . . constitute[s] a ministerial action by the board rather than quasi judicial action" (*DiGenova* v. *State Board of Education* (1955) 45 Cal.2d 255, 260 [288 P.2d 862], internal quotation marks omitted.)

The facts here are considerably different, however. After a hearing, the Board of Registered Nursing concluded Morton engaged in unprofessional

---

[5]The distinction between traditional and administrative mandate, at least in the abstract, is fairly straightforward. Traditional mandate (Code Civ. Proc., § 1085) is the appropriate vehicle to challenge a ministerial act by an agency, i.e., the performance of a mandatory duty. (Cal. Administrative Mandamus (Cont.Ed.Bar 1989) § 3.13, p. 84.) If the agency's action is quasi-judicial, i.e., if it involves an administrative hearing and the exercise of discretion, then an aggrieved party's remedy is administrative mandate per Code of Civil Procedure section 1094.5. (*Ibid.*)

[6]In some occupations, for example, the Legislature requires automatic license revocation by the governing board if the holder is convicted of a criminal offense. A certificated school teacher accused of "immoral or unprofessional conduct or evident unfitness for service . . ." is entitled to a hearing on the charges before the county board of education. Discipline may then be imposed by the Commission for Teacher Preparation and Licensing. (Ed. Code, § 44422.) But if a teacher is convicted of specified sex or narcotics offenses, punishment by the Commission for Teacher Preparation and Licensing is automatic and mandatory. (Ed. Code, § 44425.) There, the commission has no discretion to refuse to revoke the credential of a convicted teacher, and revocation occurs without a hearing. Action by the commission in the former case is quasi-judicial; in the latter it is ministerial.

conduct. That finding was affirmed by the superior court and not challenged on appeal. The board, having previously made a factual determination concerning a licensee's conduct, was still vested by the Legislature with the power and discretion to assess the appropriate discipline. (Code Civ. Proc., § 1094.5, subd. (f).) No statute compelled revocation or any other particular action. Indeed, Business and Professions Code section 2759 authorized the board to "[take] such other action in relation to disciplining [her] as the board in its discretion may deem proper."[7] This is grist for judicial review by administrative mandate under Code of Civil Procedure section 1094.5. And where a petition for writ of mandate is filed "in accordance with the provisions of the Code of Civil Procedure," Government Code section 11523 requires that the challenge be launched within 30 days after the effective date of the board's order. Morton was late; she was not entitled to any relief as a matter of law. (See *Miller v. Board of Medical Quality Assurance* (1987) 193 Cal.App.3d 1371 [238 Cal.Rptr. 915].)

■ We add, however, that Morton could not have prevailed even if her petition had been timely. Her insistence that the board had no discretion to impose probation after the superior court reversed and remanded her case for reconsideration of the appropriate penalty finds no support in the law.[8] She offers no authority for her position, and we have not located any. The board's discretion under Business and Professions Code section 2759 is virtually unfettered and clearly authorized the action it took. (See *Bryce v. Board of Medical Quality Assurance* (1986) 184 Cal.App.3d 1471 [229 Cal.Rptr. 483].)

Morton has also ignored the strong policy argument in favor of the discipline imposed: Even where punishment falls short of revocation, it is important for the health, safety, and welfare of the public that the board be able to monitor a nurse's progress for a reasonable period of time to ensure compliance with all nursing regulations. This could only be accomplished in Morton's case by imposing probation prospectively, i.e., from the date of the new decision, when her license was restored.[9]

---

[7] Section 2759 reads in full, "The board shall discipline the holder of any license, whose default has been entered or who has been heard by the board and found guilty, by any of the following methods: [¶] (a) Suspending judgment. [¶] (b) Placing him upon probation. [¶] (c) Suspending his right to practice nursing for a period not exceeding one year. [¶] (d) Revoking his license. [¶] (e) Taking such other action in relation to disciplining him as the board in its discretion may deem proper."

[8] Morton is equally insistent that the board, by failing to expressly acknowledge that it had considered the 1988 period of revocation before imposing an additional one year of probation, has failed to perform a ministerial duty. But Morton's petition for reconsideration to the board raised that precise point, and it was rejected.

[9] Before the first superior court decision (when the initial revocation was in effect and Morton made no effort to have it stayed), there was no need to commit public funds to the

Judgment affirmed. Respondent and cross-appellant is entitled to costs.

Crosby, Acting P. J., and Wallin, J., concurred.

---

monitoring of her nursing skills: Morton was barred from the practice of nursing. If the superior court had not granted her first writ petition, however, Morton would have been eligible to petition for reinstatement after one year. (Gov. Code, § 11522.) As already discussed, per Government Code section 11522 (see pt. II, *ante*), the board has the authority to impose conditions upon reinstatement of a nursing license. That authority is, of course, the practical equivalent of placing a reinstated licensee on probation.

Morton will be similarly eligible to petition for reinstatement one year from the effective date of her current license revocation. The board will similarly have the discretion to impose "any terms and conditions that [it] reasonably deems appropriate . . . as a condition of reinstatement." (Gov. Code, § 11522.)