[No. C016988. Third Dist. Jan. 31, 1995.]

HARRIS TRANSPORTATION CO. et al., Plaintiffs and Appellants, v. AIR RESOURCES BOARD, Defendant and Respondent.

COUNSEL

Richard W. Smith and Daniel J. McCarthy for Plaintiffs and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Michael J. Weinberger, Jeremiah D. Blair and Barry Martin, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**PUGLIA, P. J.**—Plaintiffs appeal from a superior court judgment denying their petition for writ of mandate challenging enforcement of the Heavy-Duty Vehicle Inspection Program (Cal. Code Regs., tit. 13, §§ 2180-2187, hereafter HDVIP) adopted by defendant California Air Resources Board (Board). HDVIP establishes procedures and criteria for intermittent roadside measurement of smoke emissions from heavy-duty diesel motor vehicles. Plaintiffs' writ petition invoked Code of Civil Procedure section 1094.5 to overturn specific enforcement actions pursuant to HDVIP and Code of Civil Procedure section 1085 to prohibit future enforcement of HDVIP. The superior court concluded plaintiffs failed in the administrative proceedings to preserve their challenge to the individual enforcement actions. As to the effort to prohibit future enforcement, the court concluded that an action to enforce a citation affords recipients of future citations for violating HDVIP a plain, speedy and adequate remedy (Code Civ. Proc., § 1086) by which to vindicate the concerns raised here by plaintiffs.

On appeal plaintiffs contend, as they did in the superior court, that the HDVIP test procedure is unlawful because it is not generally accepted in the

scientific community, and it creates a conclusive presumption; plaintiffs also contend the tests were not properly performed. We shall affirm.

I

The Board was established in 1967 by the Mulford-Carrell Air Resources Act (Stats. 1967, ch. 1545, § 5, p. 3680) and charged with "coordinating efforts to attain and maintain ambient air quality standards, to conduct research into the causes of and solution to air pollution, and to systematically attack the serious problem caused by motor vehicles, which is the major source of air pollution in many areas of the state." (Health & Saf. Code, § 39003; *Western Oil & Gas Assn.* v. *Air Resources Bd.* (1984) 37 Cal.3d 502, 508 [208 Cal.Rptr. 850, 691 P.2d 606].)

In 1988, the Legislature enacted Health and Safety Code section 44011.6 (hereafter section 44011.6) directing the Board to develop, "[a]s expeditiously as possible," "a test procedure for the detection of excessive smoke emissions from heavy-duty diesel motor vehicles that is feasible for use in an intermittent roadside inspection program." (Stats. 1988, ch. 1544, § 26; § 44011.6, subd. (a)(1).)[1] Section 44011.6 directs the Board to adopt regulations which "prohibit the use of heavy-duty motor vehicles which are determined to have excessive smoke emissions or other emissions-related defects, *using the test procedure established pursuant to this section.*" (§ 44011.6, subd. (d), italics added.) The Board may "issue a citation to the owner or operator for any vehicle in violation of the regulations adopted under this section," (§ 44011.6, subd. (e)) i.e., any vehicle failing to pass the test prescribed by the Board. (See Cal. Code Regs., tit. 13, § 2182 at fn. 4 *post*, p. 1476.)

Thereafter, the Board adopted regulations establishing HDVIP and procedures for contesting a citation thereunder. HDVIP utilizes a "snap-idle" test for measuring the opacity of vehicle emissions.[2] To test a vehicle, it is put through a "snap-idle cycle" three times and the maximum instantaneous value recorded during each cycle is taken as the opacity reading for that

---

[1]The relevant subdivisions of original section 44011.6 enacted in 1988 have been renumbered by amendments adopted after the violations at issue here occurred. For simplicity, we cite to the subdivisions as they are designated in the current version of the statute. (Stats. 1993, ch. 578, § 1.)

[2]"Opacity" means "the percentage of light obstructed from passage through an exhaust smoke plume." (Cal. Code Regs., tit. 13, § 2180.1, subd. (a)(19).)

cycle.[3] (Cal. Code Regs., tit. 13, § 2182, subd. (h).) The test opacity is an average of at least two of these values. Opacity may not exceed either 40 or 55 percent depending upon the age and characteristics of the vehicle. (Cal. Code Regs., tit. 13, § 2182, subds. (a), (b), (h)(5).)[4]

Under the hearing procedures (Cal. Code Regs., tit. 17, § 60075.1 et seq.), a vehicle owner may contest a citation by filing a request for hearing within

---

[3] A "snap-idle cycle" is described as "rapidly depressing the accelerator pedal from normal idle to the full power position, holding the pedal in this position for no longer than ten seconds or until the engine reaches maximum speed, and fully releasing the pedal so that the engine decelerates to normal idle." (Cal. Code Regs., tit. 13, § 2180.1, subd. (a)(27).)

[4] California Code of Regulations, title 13, section § 2182 reads in relevant part:

"(a) No 1974 or subsequent model-year heavy-duty diesel-powered vehicle with a Federal peak smoke engine certification level of thirty-five (35) percent peak opacity or less operating on the highways within the state of California shall exceed forty (40) percent peak smoke opacity when tested in accordance with this section unless its engine is exempted under subsection (c) or (d) below.

"(b) No other heavy-duty diesel-powered vehicle operating on the highways within the state of California, including pre-1974 model-year vehicles[,] shall exceed fifty-five (55) percent peak smoke opacity when tested in accordance with this section unless its engine is exempted under subsection (c) or (d) below.

" . . . . . . . . . . . . . . . . . . . . . .

"(g) The smoke opacity measurement equipment shall consist of a light extinction type smokemeter which includes an optical detection unit, a control/indicator unit, and a strip chart recorder.

"(1) The smokemeter shall comply with the specifications provided in the Society of Automotive Engineers (SAE) procedure J1243, 'Diesel Emission Production Audit Test Procedure,' May 1988, which is incorporated herein by reference, section 7.4 and shall be calibrated according to specifications in SAE procedure J1243, section 8.2.

"(2) The strip chart recorder shall comply with specifications in SAE procedure J1243, section 7.5, subsections 1 - 4 (May 1988).

"(h) The test procedure shall consist of preparation, preconditioning, and test phases:

"(1) In the preparation phase, the vehicle shall be placed at rest, the transmission shall be placed in neutral, and the vehicle wheels shall be properly restrained to prevent any rolling motion.

"(2) In the preconditioning phase, the vehicle shall be put through a snap-idle cycle two or more times until two successive measured smoke levels are within ten (10) opacity percent of each other. The smoke meter shall be rechecked prior to the preconditioning sequence to determine that its zero and span setting are adjusted according to specifications in SAE procedure J1243, section 8.1 (May 1988).

"(3) In the test procedure phase, the vehicle shall be put through the snap-idle cycle three times.

"(4) The opacity shall be measured during the preconditioning and test phase with a smokemeter and shall be recorded continuously on the chart recorder during each snap-idle cycle. The maximum instantaneous value recorded by the chart recorder shall be the opacity reading.

"(5) The test opacity to determine compliance with (a) through (b) above shall be the average of the two meter readings with the least difference in opacity values. If all three readings have successive equivalent differences between them, the test opacity shall be the average of the three readings."

30 days of its receipt. (Cal. Code Regs., tit. 17, § 60075.10.) In the hearing, the issues are limited to those raised by the citation and the request for hearing. (Cal. Code Regs., tit. 17, § 60075.12.) To obtain judicial review under Code of Civil Procedure section 1094.5 of a final decision by the Board, a petition for writ of mandate must be filed within 60 days of service of the decision. (Cal. Code Regs., tit. 17, § 60075.47.)

Plaintiffs are owners of vehicles subject to HDVIP who were issued citations and timely requested administrative hearings. In the administrative proceedings, plaintiffs contested the scientific validity of the snap-idle test procedures adopted by the Board. The Board rejected the challenge and upheld the citations.

Plaintiffs petitioned the superior court for relief under Code of Civil Procedure sections 1094.5 and 1085. (Further statutory references to sections of an undesignated code are to the Code of Civil Procedure.) Plaintiffs' writ petition alleged HDVIP is unlawful as it utilizes an inaccurate test and the hearing procedures are unconstitutional in that they preclude challenge to the test results. In oral argument before the superior court, plaintiffs raised the additional claim that the tests were not properly performed. Plaintiffs sought relief under section 1094.5 ordering the Board to set aside its decisions on the individual citations and under section 1085 ordering the Board to cease enforcing HDVIP.

The superior court dismissed the petition as to certain of the plaintiffs for failure to file their writ petition within 60 days of the administrative decision. (Cal. Code Regs., tit. 17, § 60075.47.) As to the remaining plaintiffs, the court denied relief, concluding plaintiffs may not challenge the regulations in a proceeding contesting a citation, and any issue regarding performance of the tests was waived for failure to raise it in the administrative proceeding. Regarding the request prospectively to enjoin enforcement of HDVIP, the court concluded plaintiffs have an adequate remedy in the ordinary course of law. (§ 1086.)

II

We first consider plaintiffs' appeal from the rejection of their section 1094.5 challenge to the individual citations.

Section 1094.5 provides for review of a final administrative decision to determine "whether [the Board] has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the

respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (§ 1094.5, subd. (b).)

In their writ petition, plaintiffs challenged the regulations establishing HDVIP and the hearing procedures. Plaintiffs alleged they were denied a fair hearing because the snap-idle test results were received in the administrative hearing over their *Kelly/Frye* objection and they were not permitted to introduce evidence in rebuttal.[5] The trial court refused to consider this argument, indicating the validity of the regulations themselves is not a proper subject of review in an enforcement proceeding.

On appeal, plaintiffs appear to raise three arguments to attack the superior court's ruling: (1) the *Kelly* standard is applicable to administrative proceedings, (2) the regulations are invalid because they utilize a test which does not satisfy the *Kelly* standard, and (3) validity of the administrative regulations may be tested in a section 1094.5 proceeding.

We agree as a general matter the *Kelly* standard is applicable to administrative proceedings. (See *Seering* v. *Department of Social Services* (1987) 194 Cal.App.3d 298, 310 [239 Cal.Rptr. 422].) Had the question before the Board been the opacity of plaintiffs' vehicle emissions, and snap-idle test results were admitted to prove the particular level of opacity, *Kelly* would require proof of the general scientific acceptance of that test. However, the dispositive issue before the Board was not the particular opacity level but the test results themselves. Section 44011.6 directs the Board to adopt a test to measure vehicle emissions and authorizes the Board to cite the owner of "any vehicle in violation of {Board] regulations." (§ 44011.6, subd. (e).) Board regulations prohibit the operation on California highways of heavy-duty diesel motor vehicles which fail the snap-idle test. (Cal. Code Regs., tit. 13, § 2182.) Whether the snap-idle test is scientifically accepted as an accurate measure of vehicle emissions is not the relevant issue at this juncture. Rather it is whether the plaintiffs' vehicles failed the test prescribed by the Board, i.e., the snap-idle test. If a vehicle fails the snap-idle test, it is in violation of Board regulations and the owner is subject to citation. In this context, *Kelly* is inapplicable.

---

[5] *People* v. *Kelly* (1976) 17 Cal.3d 24 [130 Cal.Rptr. 144, 549 P.2d 1240]; *Frye* v. *United States* (D.C. Cir. 1923) 293 F. 1013 [54 App.D.C. 46, 34 A.L.R. 145]. The *Kelly/Frye* rule established a legal standard for admission of scientific evidence based on its level of acceptance in the relevant scientific community. In *People* v. *Leahy* (1994) 8 Cal.4th 587 [34 Cal.Rptr.2d 663, 882 P.2d 321], the California Supreme Court recast this legal principle as the *Kelly* rule in light of the United States Supreme Court's holding in *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.* (1993) 509 U.S. __ [125 L.Ed.2d 469, 113 S.Ct. 2786] that *Frye* was abrogated by rule 702 of the Federal Rules of Evidence. Hereafter we shall use "*Kelly*" in place of "*Kelly/Frye*."

Nevertheless, as plaintiffs contend, the scientific validity of the snap-idle test may be contested in an enforcement proceeding by challenging the quasi-legislative act of the Board in adopting the test. An administrative enforcement action is adjudicatory in nature. Evidence is presented and the hearing officer makes factual determinations as to whether there has been a violation. In such proceedings a challenge to the legality of the regulations is cognizable. (See, e.g., Woods v. *Superior Court* (1981) 28 Cal.3d 668, 676-677 [170 Cal.Rptr. 484, 620 P.2d 1032] [unsuccessful applicant for welfare benefits may contest validity of regulation mandating denial in section 1094.5 mandamus proceeding]; *Green* v. *Obledo* (1981) 29 Cal.3d 126, 143, fn. 12 [172 Cal.Rptr. 206, 624 P.2d 256] [same]; *Verdugo Hills Hospital, Inc.* v. *Department of Health* (1979) 88 Cal.App.3d 957, 962-963 [152 Cal.Rptr. 263] ["Proceeding pursuant to an invalid regulation is not proceeding in the manner required by law."].)

Review of an administrative regulation is governed by well-recognized standards. "Where a statute empowers an administrative agency to adopt regulations, such regulations 'must be consistent, not in conflict with the statute, and reasonably necessary to effectuate its purpose.'" (*Woods* v. *Superior Court, supra*, 28 Cal.3d at p. 679.) "[I]n considering whether the regulation is 'reasonably necessary' under the foregoing standards, the court will defer to the agency's expertise and will not 'superimpose its own policy judgment upon the agency in the absence of an arbitrary and capricious decision.' (*Pitts* v. *Perluss* (1962) 58 Cal.2d 824, 832 [27 Cal.Rptr. 19, 377 P.2d 83].)" (*Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 411 [128 Cal.Rptr. 183, 546 P.2d 687].)

In the administrative proceeding, plaintiffs argued there is no evidence the snap-idle test adopted by the Board accurately measures smoke emissions. The Board rejected plaintiffs' challenge, explaining plaintiffs' evidentiary showing did "no more than indicate the existence of some controversy or disagreement about the procedure to be used to test heavy-duty diesel vehicles. This falls far short of proving that the State Board's adoption of the test procedure . . . was arbitrary, capricious or without a rational basis."

Plaintiffs' writ petition alleges the Board "abused its discretion in adopting the Title 13 test procedure regulations by arbitrarily, capriciously, and in derogation of [plaintiffs'] rights to substantive due process of law: [¶] (a) adopting an unlawful conclusive presumption of guilt; [¶] (b) adopting a test procedure lacking scientific basis; [¶] (c) adopting vague test equipment specifications for equipment permissible for use in the snap-idle test procedure; and [¶] (d) adopting vague and ambiguous regulations."

However, at oral argument in the superior court, plaintiffs expressly abandoned their challenge to the regulations. Responding to the court's observation that plaintiffs faced a heavy burden in proving the regulations were arbitrary, plaintiffs suggested they could meet this burden by establishing the individuals administering the tests did not first correlate the measuring devices to a federal standard, as required by the regulations. Plaintiffs made no mention of the purported invalidity of the regulations establishing the test procedure itself. In fact, later in the hearing, plaintiffs conceded the regulations had been properly adopted.

The trial court rejected plaintiffs' claim of failure to correlate the test equipment because, as plaintiffs conceded, it had not been raised in the administrative proceeding. In a proceeding in administrative mandamus, the plaintiff is limited to the issues raised at the administrative level. (*Woods* v. *Superior Court, supra*, 28 Cal.3d at pp. 680-681.) "The general principle that courts should not be burdened with matters which can be adequately resolved in administrative fori [*sic*], frequently expressed in the rule requiring exhaustion of administrative remedies . . . , is founded at least in part on the wisdom of the efficient use of governmental resources. . . . Such use serves the twin goals of avoiding delay and unnecessary expense in vindication of legal rights. Permitting administrators an opportunity to construe challenged regulations in a manner to avoid their invalidation is preferable to requiring a court challenge. Moreover, in those cases in which the validity of such a regulation must be judicially resolved, the task of a reviewing court is simplified by a narrowing and clarification of the issues in an administrative hearing." (28 Cal.3d at pp. 680-681, citations omitted.)

Plaintiffs waived any argument that the tests were not properly conducted by failing to raise the issue in the administrative proceeding and thereby deprived the Board of the opportunity to establish compliance with the regulations. Having failed to preserve any other challenge to the individual administrative determinations, plaintiffs are not entitled to relief under section 1094.5.

### III

■ The same general challenges to HDVIP are repeated by plaintiffs in connection with their claim for relief under section 1085. In addition, plaintiffs allege the trial court denied them the right to a trial and presentation of evidence to establish their claims.

Section 1085 provides for issuance of a writ of mandate to "any inferior tribunal, corporation, board, or person, to compel the performance of an act

which the law specially enjoins, as a duty resulting from an office, trust, or station . . . ." Section 1085 is the proper vehicle for challenging a ministerial act of an agency, such as a mandatory duty to issue regulations. (*Morton v. Board of Registered Nursing* (1991) 235 Cal.App.3d 1560, 1566, fn. 5 [1 Cal.Rptr.2d 502].) Writ relief must be granted "in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law." (§ 1086.)

In their writ petition, plaintiffs alleged the snap-idle test lacks scientific acceptance and the hearing procedures deny due process by establishing a conclusive presumption from the test results. However, as with their cognate section 1094.5 claims, plaintiffs abandoned these challenges at oral argument in the superior court. After the court explained plaintiffs had waived any challenge in the section 1094.5 proceeding based on failure to correlate the test equipment, plaintiffs argued the challenge was not waived to the extent it addressed future enforcement proceedings. The court indicated future violators would have an adequate remedy in the ordinary course of law (§ 1086) by challenging the test procedure in enforcement proceedings, and therefore writ relief is unnecessary. Plaintiffs responded that this remedy would not be adequate "[b]ecause the regulation was properly adopted." According to plaintiffs, the regulations had been properly adopted, but not properly administered. Thus, plaintiffs waived all claims to validity of the regulations, both facially and as applied.

A plaintiff is entitled to writ relief as a matter of law if there has been compliance with the requirements for such relief, including lack of a plain, speedy, and adequate remedy at law. (*Flora Crane Service, Inc.* v. *Ross* (1964) 61 Cal.2d 199, 203-204 [37 Cal.Rptr. 425, 390 P.2d 193].) Where an adequate remedy at law exists, the matter of writ relief is within the discretion of the court.

Had plaintiffs not conceded the regulations embracing the snap-idle test were properly adopted, the issue before us would be whether such adoption was arbitrary and capricious or otherwise lacking in support. Plaintiffs would have been entitled to a trial and the presentation of evidence on this issue. However, that is not the issue plaintiffs have chosen to litigate. Instead of challenging the regulations themselves, plaintiffs contend the regulations are not being properly administered.

In any future proceedings to enforce HDVIP, the cited party may challenge a citation on the basis of lack of correlation of the test equipment. In the event the Board rejects the challenge, the rejection may be reviewed in a

section 1094.5 proceeding. Such review would adequately deal with these plaintiffs' concerns. Since an adequate remedy in the ordinary course of law exists, writ relief is discretionary. We conclude the trial court did not abuse its discretion in denying the requested relief.[6]

The judgment is affirmed.

Davis, J., and Nicholson, J., concurred.

A petition for a rehearing was denied February 24, 1995, and appellants' petition for review by the Supreme Court was denied April 19, 1995.

---

[6]Having so concluded, we need not consider the effect of recent amendments to section 44011.6 requiring the Board to adopt procedures to assure HDVIP tests do not result in failure "when the engine is in good operating condition and is adjusted to the manufacturer's specifications." (§ 44011.6, subd. (c).)

We also need not consider the court's dismissal of certain plaintiffs' petitions as untimely. (But see *California Standardbred Sires Stakes Com., Inc.* v. *California Horse Racing Bd.* (1991) 231 Cal.App.3d 751, 758, 760-761 [282 Cal.Rptr. 656].) Had those petitions not been dismissed and their merits considered, they would have met the same fate as the claims we have here rejected, and for the same reasons.