Filed 2/25/13  J.T. v. San Luis Obispo County Bd. of Educ. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| J.T., <br><br>   Plaintiff and Appellant, <br><br> v. <br><br> SAN LUIS OBISPO COUNTY BOARD OF EDUCATION et al., <br><br>   Defendants and Respondents. | 2d Civil No. B241026 <br> (Super. Ct. No. CV110352) <br> (San Luis Obispo County) |

        J.T. appeals a judgment denying his petition for writ of administrative mandate (Code Civ. Proc., § 1094.5) seeking to overturn decisions to expel him from school by the San Luis Obispo County Board of Education (the County Board) and the San Luis Obispo Coastal Unified School District (the District).  We conclude, among other things:  1) the trial court did not err by finding J.T. committed sexual acts against a female student, which authorized the County Board and the District to expel him; 2) admissions J.T. made to school authorities about the incident were admissible and *Miranda* advisements were not received; 3) the victim's declaration was admissible; and 4) J.T. was not entitled to a reversal because of alleged notice deficiencies.  We affirm.

FACTS

        J.T. and a female student had a prior relationship.  They were students at a high school in the District.  She submitted a declaration to the District claiming J.T. sexually assaulted her.  In that declaration, she said that at the end of her sixth period class

J.T. said he "wanted" her to "hang out with him." She said she would be "hanging out" with her friends at the teen center near school. She walked to her locker. J.T. followed her. She asked him if he was following her. When he said he was, she called him "a creep." She said, "I opened my locker and put everything inside rather than picking through what I needed for homework because I felt like it would get me out a little faster."

The student and J.T. went to the teen center near school. The student was waiting for calls from the friends she expected to meet there. But her friend called to say "they weren't going to make it." J.T. placed his hands on her thigh and "over [her] shirt." She moved away from him and said she "didn't want to have sex with him again." She started to leave. He asked her "to have sex with [him] again." She said, "[N]o."

The student walked away in the direction of her mother's place of work to wait for a ride "to go home." J.T. followed her. He grabbed her hands and "started pulling [her] down [a] bike path." She tried to break free and get help from motorists who were passing by. Nobody stopped. J.T. grabbed her around the waist, pushed her in the direction of a bridge and "pinned [her] to the side of it." He "reached down the back of [her] pants multiple times." He reached "into [her] shirt and touched [her] breasts" multiple times. She ran down the bike path and called her father to take her home.

J.T. was arrested for sexual battery and taken into custody on January 12, 2011.

On January 28, 2011, the District recommended that J.T be expelled. It sent a notice of an expulsion hearing before the District's Board of Education.

On February 15, 2011, the District's Board of Education conducted an evidentiary hearing in closed session. J.T. elected not to testify. He was represented by the "Executive Director of CASA, Court Appointed Special Advocates" who decided not to call any witnesses on J.T.'s behalf. The high school principal testified that in an interview at school J.T. admitted to the dean of students and a police officer that he touched the female student in her "private areas despite her protestations and the fact that she said 'no,' 'don't touch me,' and 'leave me alone.'" He admitted to "repeatedly asking her to have sex with him." J.T. did not receive *Miranda* advisements before making these

statements at school.  The dean of students testified this was "an interview" and J.T. "wasn't arrested at that point."  The student victim did not testify at the hearing.  Her declaration was admitted into evidence.  The District's board voted to expel J.T.

J.T. appealed the expulsion decision to the County Board.  It upheld the expulsion and found J.T.'s "acts began on school grounds and culminated in the sexual battery while the victim and [J.T.] were returning home from school."

J.T. filed a petition for writ of administrative mandate against the District and the County Board.  The superior court entered judgment against J.T.  It found, among other things:  1) the evidence in the administrative record supported the decision to expel him, 2) J.T.'s statements to school officials were properly admitted as evidence, 3) the victim's declaration was properly admitted consistent with the Education Code procedure for expulsions, and 4) J.T. received adequate notice of the expulsion hearing.

## DISCUSSION

### *Substantial Evidence*

J.T. contends the judgment must be reversed because his actions did not fall within the statutory grounds for expulsion.  He claims there is no substantial evidence supporting the judgment.  We disagree.

In reviewing an administrative decision, the trial court exercises its independent judgment on the evidence in the administrative record.  (*Bassett Unified School Dist. v. Commission on Professional Competence* (1988) 201 Cal.App.3d 1444, 1450.)  In reviewing the sufficiency of the evidence, the appellate court does not weigh the evidence or decide credibility.  It determines whether substantial evidence supports the trial court's judgment.  (*Fredrics v. Paige* (1994) 29 Cal.App.4th 1642, 1647; *Church of the Merciful Saviour v. Volunteers of America, Inc.* (1960) 184 Cal.App.2d 851, 856.)  Consequently, we look to the evidence supporting the court's findings and draw all reasonable inferences to support the judgment.  (*Griffith Co. v. San Diego College for Women* (1955) 45 Cal.2d 501, 508.)

3.

Education Code section 48900[1] provides, in relevant part, "A pupil shall not be suspended from school or recommended for expulsion, unless the superintendent of the school district or the principal of the school in which the pupil is enrolled determines that the pupil has committed an act as defined pursuant to subdivisions (a) to (r), inclusive." One of the prohibited acts in subdivision (n) includes a student who has "[c]ommitted or attempted to commit a sexual assault . . . or committed a sexual battery . . . ." (*Id.*, subd. (n).)

Here the trial court found J.T. "committed [a] sexual battery" and a sexual assault on a female student. These findings are supported by the record.

J.T. argues that his acts were "not related to a school activity" and did not fall within section 48900. We disagree.

Section 48900, subdivision (s) provides, in relevant part, "A pupil shall not be suspended or expelled for any of the acts enumerated in this section unless the act is related to a school activity or school attendance occurring within a school under the jurisdiction of the superintended of the school district or principal or occurring within any other school district. A pupil may be suspended or expelled for acts that are enumerated in this section and related to a school activity or school attendance that *occur at any time, including, but not limited to, any of the following:* [¶] *(1) While on school grounds.* [¶] *(2) While going to or coming from school. . . .*" (Italics added.)

J.T. claims that his sexual battery took place after he and the female student stopped at the teen center. He argues that it consequently occurred while they were "coming from the Teen Center," not "coming from school." (Italics omitted.) Respondents claim J.T.'s argument omits where his conduct originated and the victim's ultimate destination.

The trial court found J.T.'s "sexual assault commenced at school when [J.T.] approached the Student with the purpose of obtaining a sexual encounter." J.T. "followed" her, and his "conduct started at school and ended with the sexual assault on the bike path *all while the Student was making her way home*." (Italics added.)

---

[1] All statutory references are to the Education Code unless otherwise stated.

These findings are supported by the record. The trial court could reasonably infer J.T.'s admissions showed he had a sexual motive, that he was not concerned with the victim's "protestations," and it could rely on the dean of students' testimony that this incident "started in a classroom." In addition, in her declaration, the victim said that at the end of her sixth period class, J.T. said he "wanted" her to "hang out with him." She declined and said she would be "hanging out" with her friends. He followed her as she walked to her school locker. She asked him if he was following her. He admitted he was. She called him "a creep." A reasonable inference is that she was intimidated by his conduct at school. She said she "opened [her] locker and put everything inside rather than picking through what I needed for homework because *I felt like it would get me out a little faster*." (Italics added.)

J.T. notes that he and the victim stopped at the teen center. The trial court found "there is no evidence that the Student actually went into the Teen Center." The dean of students testified they were "outdoors at the Teen Center." The victim intended to meet her friends there. But they called to say they were not coming. The court viewed the teen center, which is adjacent to the school, to be a temporary stop on the way to the victim's ultimate destination - her home. There is evidence to support that finding. At the hearing the principal testified the victim's "normal trip home was to go to the Teen Center, and then go meet her mom at work and then get a ride home." He said she "was still on her way home from school" when she was sexually assaulted and the teen center is "on the way home." The dean of students testified that J.T. was also "on his way home" because the sexual assault occurred before he received his ride to the youth transitional program where he was living. The court said, "It would be too narrow of a statutory interpretation to conclude that the Student's stopping at the Teen Center terminated the coming from school jurisdiction."

The trial court was correct. The statutory goal is to protect the safety of students. (*Fremont Union High School Dist. v. Santa Clara County Bd. of Education* (1991) 235 Cal.App.3d 1182, 1187 [expulsion is an administrative penalty "designed to promote student safety"].) The broad statutory language shows the legislative intent to

5.

protect students from being victimized by classmates after school as they are vulnerable before they reach the safety of their homes. To achieve this goal, section 48900 prohibits a broad range of conduct, including sexual assaults (subd. (n)), using force or violence against another student (subd. (a)(2)), "obscene" acts (subd. (i)), "hazing" (subd. (q)), "bullying" (subd. (r)(1)), and conduct that would cause "a reasonable pupil to experience a substantially detrimental effect on his or her physical or mental health" (subd. (r)(1)(B)). Students have a right to be protected from sexual harassment and unwanted sexual advances by their classmates. (*Granowitz v. Redlands Unified School Dist.* (2003) 105 Cal.App.4th 349, 357.) The court could reasonably infer the victim was subject to a pattern of sexual harassment that began at school and ended with a sexual assault on her way home from school. Consequently, she was within the zone of protection intended by the Legislature. J.T.'s continuing course of conduct, which began at school, falls within the scope of prohibited acts envisioned by section 48900. The evidence is sufficient.

*The Admissibility of J.T.'s Statements to School Authorities*

J.T. claims his statements to the dean of students about the incident had to be excluded because he was not advised of his *Miranda* rights before answering questions.

The trial court found J.T. waived this issue because his hearing advocate "failed to object to [the principal's] testimony at the District's hearing." That finding is supported by the record. At the administrative hearing, when the principal testified about J.T.'s statements, his advocate made no objection and did not move to strike any portion of that testimony. That constituted a waiver of this issue. (*Harris Transportation Co. v. Air Resources Board* (1995) 32 Cal.App.4th 1472, 1480.)

But even on the merits, the result is the same. J.T. was not given a *Miranda* advisement when he was questioned about the incident at school. But it is well established that the *Miranda* exclusionary rule that applies to criminal cases is not applicable to high school disciplinary proceedings. (*Gordon J. v. Santa Ana Unified School Dist.* (1984) 162 Cal.App.3d 530, 531.)

J.T. contends the school principal's testimony about what J.T. said about the incident should have been excluded as inadmissible hearsay. But this testimony about

6.

J.T.'s statements constituted admissions. J.T. confirmed that he had sexually battered the victim. The trial court did not err by considering this as admissible evidence. It was properly admitted as an exception to the hearsay rule for admissions of an adverse party. (Evid. Code, § 1220; *Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 325; *Szmaciarz v. State Personnel Board* (1978) 79 Cal.App.3d 904, 913 ["Since the hearsay evidence would have been admissible over an objection based on hearsay in a civil action, this evidence may support a finding of fact"].)

*Admissibility of the Victim's Declaration*

J.T. contends the trial court erred by considering the victim's declaration. He argues: 1) it was inadmissible hearsay, and 2) it did not fall within the good cause exception requirements of section 48918, subdivision (f).

Respondents claim these issues were waived because J.T.'s advocate did not raise these objections at the hearing. The trial court noted that his lawyer sent a letter objecting to "the introduction" of "declarations on the grounds they are hearsay." But respondents are correct that no objection was made on the ground that the declaration should have been excluded for not meeting the good cause exception requirements of section 48918. Consequently, that issue was waived. (*Harris Transportation Co. v Air Resources Board*, *supra*, 32 Cal.App.4th at p. 1480.) But the result is the same on the merits.

The trial court found the victim's declaration was properly admitted consistent with the Education Code procedure for expulsion hearings. The court did not err.

Section 48918, subdivision (f) provides, in relevant part, "The governing board . . . may, upon a finding that good cause exists, determine that the disclosure of either the identity of a witness or the testimony of that witness at the hearing, or both, would subject the witness to an unreasonable *risk of psychological* or physical harm. Upon this determination, *the testimony of the witness may be presented at the hearing in the form of sworn declarations . . . .*" (Italics added.)

7.

At the hearing the principal requested that the victim's declaration be admitted under the good cause exception. He testified that she "signed an affidavit of fear, that presenting her testimony here in person would cause psychological or physical damage . . . ." The victim was subjected to a sexual assault. The principal testified, "[T]he presence of [J.T.] causes a continuing danger to the physical safety of the [victim] . . . ." J.T. presented no evidence to contradict that testimony. Moreover, even without the victim's declaration, J.T. has not shown how the result would change. The triers of fact had J.T.'s admissions of sexual battery that supported the decision to expel him. They had the testimony of the principal and the dean which was also admitted at the hearing without any objection by J.T.'s CASA advocate.

*Inadequate Notice*

J.T. contends the judgment must be vacated because he did not receive adequate notice of the expulsion hearing. He claims he was not given 10 days' notice as required by section 48918, subdivision (b).

The trial court rejected these claims and J.T. has not shown error. The administrative record reflects that a "notice of recommendation for expulsion and expulsion hearing before the Board of Education" was sent to M.H., J.T.'s legal guardian, on January 28, 2011. The hearing was scheduled for February 7, 2001. The court found that because J.T. was unavailable, that hearing was continued "to February 15, 2011 to ensure that [J.T.] and his representatives had adequate notice of the hearing."

At the February 15th hearing, J.T.'s CASA advocate made no objection that there was insufficient notice. She did not request a continuance or claim that she had insufficient time to prepare. She proceeded to represent J.T. regarding the merits of the expulsion. (*Eliceche v. Federal Land Bank Assn.* (2002) 103 Cal.App.4th 1349, 1375 [proceeding on the merits constitutes a waiver of notice deficiencies].)

J.T. claims the District did not send the packet of information about the hearing which is required by section 48918, subdivision (b). But the record reflects the required information packet was included with the January 28th notice.

8.

We have reviewed J.T.'s remaining contentions and we conclude he has not shown error.

The judgment is affirmed.  Costs on appeal are awarded in favor of respondents.

NOT TO BE PUBLISHED.


GILBERT, P. J.


We concur:


YEGAN, J.


PERREN, J.

Dodie A. Harman, Judge

Superior Court County of San Luis Obispo

_____

Dustin M. Tardiff, Neil S. Tardiff for Plaintiff and Appellant.

Kronick, Moskovitz, Tiedemann & Girard, Roman J. Munoz, Chelsea R. Olson, Jennifer G.V. Espanol for Defendant and Respondent San Luis Obispo County Board of Education.

Lozano Smith, Daniel A. Osher, Sloan R. Simmons for Defendant and Respondent San Luis Coastal Unified School District.