Filed 6/29/15  Williams v. Medical Bd. of Cal. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| TOMMIE L. WILLIAMS, JR.,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>MEDICAL BOARD OF CALIFORNIA PHYSICIAN ASSISTANT BOARD,<br><br>Defendant and Respondent. | B254437<br><br>(Los Angeles County<br>Super. Ct. No. BS141422) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Robert H. O'Brien, Judge.  Affirmed.

———

Tommie L. Williams Jr., in pro per., Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Gloria L. Castro, Assistant Attorney General, Robert McKim Bell and Colleen M. McGurrin, Deputy Attorneys General, for Defendant and Respondent.

———

Plaintiff and appellant Tommie Williams was a licensed physician assistant. In 2007, he was convicted of crimes arising out of a conspiracy to defraud Medicare. Thereafter, in January 2013, defendant and respondent Physician Assistant Committee of the Medical Board of California (the Board) revoked Williams's license because his crimes constituted unprofessional conduct under the Physician Assistant Practice Act. (Bus. & Prof. Code, §§ 490, 2234, 2236, 3527, 3531.)

In May 2013, Williams filed a petition for administrative mandamus in the Superior Court. He challenged the Board's 1997 revocation of his license on the ground that he was never served with the accusation. He also claimed that two of the five members of the Board that revoked his license in 2013 should have been disqualified, and that the Board breached a duty to him by failing, from 2001 to 2005, to accurately report his license status on its website. The court denied the petition. We affirm.

## FACTUAL AND PROCEDURAL SUMMARY

1. *1997 Revocation of Williams's Physician Assistant License and 2000 Reinstatement*

In 1983 the Board issued a Physician Assistant License to Williams. In March 1996, the executive officer of the Board filed an accusation seeking the revocation or suspension of Williams's license based on Williams (1) making threats to employees of Los Angeles County - USC Medical Center (LAC-USC); and (2) using cocaine in a manner dangerous to himself and to the public. The accusation was served by certified mail, return receipt requested. The Board received a return receipt ostensibly signed by Williams.

Williams did not respond to the accusation or appear at a hearing on the matter. In August 1997, the Board issued a "default decision" in which it found that the accusation had been properly served, Williams had not filed a response to the accusation, and the allegations were true. The Board revoked Williams's license, effective September 4, 1997, and ordered him to pay $2,651.21 in costs.

No later than 1998,Williams learned that his license had been revoked. He never moved to vacate or reconsider that revocation before the Board. Instead, he petitioned

2

the Board for reinstatement of his revoked license.[1]  In February 2000, the Board issued a license to Williams but placed Williams on probation for seven years, including a one-year suspension.

In May 2000, Williams filed a writ of mandate petition in the Superior Court challenging the Board's 1997 revocation of his license.  According to the transcript of the hearing on the petition, the court denied the petition as untimely.

2.      *The 2007 Convictions and 2011 Accusation*

In August 2004, Williams began working at a medical clinic in Lemon Grove, California, where his duties included ordering medical tests for patients, most of whom were Medicare beneficiaries.  Williams's supervising physician worked out of a clinic in North Hollywood.  According to that physician, Williams was in charge of the Lemon Grove clinic and the only person seeing patients there.

In 2005 the Federal Bureau of Investigation (FBI) investigated the Lemon Grove clinic and determined that unnecessary tests had been performed on some patients, and other patients were charged for office visits and tests that never took place.  Williams worked at the clinic until it was shut down by authorities in July 2005.

The FBI investigation led to criminal charges against Williams and eight others connected with the clinic.  In October 2007, a jury convicted Williams of:  (1) conspiracy to commit grand theft (Pen. Code, § 182, subd. (a)(1)); (2) grand theft (*id.*, § 487, subd. (a)); (3) conspiracy to make a false insurance claim (*id.*, § 182, subd. (a)(1)); and (4) making a false insurance healthcare claim (*id.*, § 550, subd. (a)(6)).  The court granted Williams probation for five years and ordered him to pay $21,757.57 in restitution to the Medicare trust fund.  In April 2009, the Fourth District Court of Appeal, in an unpublished opinion, reversed one of the two conspiracy convictions and affirmed the convictions for grand theft and making a false insurance claim.

---

[1]      Our record does not include a written petition for reinstatement or indicate when it was filed.  It does include a decision by the Committee on the petition, which states that a hearing on the petition took place on January 13, 2000.

3

In December 2011, the Board filed an accusation seeking to revoke or suspend Williams's license based on the criminal convictions. (Bus. & Prof. Code, §§ 2234, 3527.) Williams filed an answer to the accusation and requested a hearing.

In the proceedings before the Board, Williams did not challenge the current grounds for revocation—his 2007 convictions. Instead, he challenged the 1997 revocation. He claimed that he had never received notice of the accusation, the signature on the return receipt was not his, and he had not made the charged threats to employees. Williams also argued that the Board breached its duty by failing, between 2001 and 2005, to update its website to reflect that his license was valid.

After a hearing, an administrative law judge (ALJ) found cause to suspend or revoke Williams's license, but proposed probation. The Board "non-adopted" the ALJ's proposed order and set a further hearing. The matter was then heard before a five-member Board that included Chair Robert Sachs and Glenn Mitchell. Eight days after the hearing, Williams filed a motion to disqualify Sachs based on the following: "Sachs was a committee member in [Williams's] first license revocation and had specific knowledge of [Williams's] supervisor and department chair, Dr. Robert Larsens'[s] desire to have [Williams] disciplined for his use [of] drugs and overturning the discharge from Los Angeles County service which was attempted by Dr. Larsen. Although there was evidence to contradict the allegation, no investigation was conducted. Mr. Sachs has a bias and is prejudiced against [Williams]." The motion did not mention Mitchell.

On November 30, 2012, the Board issued a decision, effective January 8, 2013, signed by Sachs, revoking Williams's license, without expressly ruling on his motion to disqualify.

3.    *Williams's 2013 Petition for Administrative Mandamus*

On February 7, 2013, Williams filed a petition for writ of mandate in the Superior Court. He sought an order directing the Board to (1) set aside the decision revoking his license and (2) reinstate his license. He also sought $10.5 million in damages.

Williams made four arguments in support of the petition: (1) he did not make the threats alleged in the 1996 accusation; (2) he did not have notice of the 1996 accusation;

4

(3) Sachs should have been disqualified from involvement with the 2012 hearing because of possible bias; and (4) the Board breached a duty to him by failing to accurately report the status of his license from 2001 to 2005.

The trial court denied the petition. The court rejected the first two claims on the ground they were untimely, rejected Williams's disqualification claim for lack of evidentiary support, and denied the website claim because it did not state a claim for administrative or traditional mandamus.

Williams timely appealed.

## DISCUSSION

1.    *Challenges to the 1997 Default Decision are Time-Barred*

Williams contends that the allegation in the 1996 accusation that he threatened a LAC-USC employee is not true and the Board's true finding on that claim in the 1997 default decision was error. He also argues that, because he was never served with the 1996 accusation, the 1997 default decision violates due process and should be set aside. The Superior Court rejected these claims as untimely. Because the facts pertaining to the application of the statute of limitations are undisputed, we review the court's decision de novo. (*Ventura Foothill Neighbors v. County of Ventura* (2014) 232 Cal.App.4th 429, 434.)

The 1996 accusation was filed pursuant to Business and Professions Code section 3527, subdivision (a), which authorized the Board, after a hearing, to revoke a physician assistant license for unprofessional conduct.[2] The proceeding is governed by the Administrative Procedure Act (APA) (Bus. & Prof. Code, § 3528; Gov. Code, § 11500 et seq.) Under the APA, if a statute or agency rule requires a licentiate to file

---

[2]    In 1996, Business and Professions Code, section 3527 provided: "The committee may order . . . the suspension or revocation of . . . a physician's assistant license after a hearing as required in [s]ection 3528 for unprofessional conduct that includes, but is not limited to, a violation of this chapter, a violation of the Medical Practice Act, or a violation of the regulations adopted by the committee or the board." Under section 3527, "unprofessional conduct" included the use of any controlled substance. (Bus. & Prof. Code, § 2239.)

5

his or her address with the licensing agency, service of an accusation may be made by registered mail to the address on file. (Gov. Code, § 11505, subd. (c).) Board rules required a physician assistant to keep the Board informed of his address. (See Bus. & Prof. Code, § 136, subd. (a); Cal. Code Regs., tit. 16, § 1303.) This procedure satisfies due process even if the person does not receive actual notice. (*Evans v. Department of Motor Vehicles* (1994) 21 Cal.App.4th 958, 971.)

If a licentiate has been served in compliance with the APA and fails to file a notice of defense or appear at the hearing, his or her default may be taken. (Gov. Code, § 11520, subd. (a).)

The timeliness of judicial review of the Board's decision is governed by two 30-day deadlines. (See *Hansen v. Board of Registered Nursing* (2012) 208 Cal.App.4th 664, 669 (*Hansen*).) The first is a 30-day deadline for requesting the Board to reconsider its decision (Gov. Code, § 11521, subd. (a)), which begins upon "the delivery or mailing of a decision to a respondent, or on the date set by the agency itself as the effective date of the decision if that date occurs prior to the expiration of the 30-day period . . . ." (*Ibid.*) Here, the Board set an effective date of September 4, 1997, for its default decision.

The second 30-day period is the statute of limitations for filing a petition for writ of mandate in the Superior Court. (Gov. Code, § 11523; *Kupka v. Board of Administration* (1981) 122 Cal.App.3d 791, 794; *Hansen, supra,* 208 Cal.App.4th at p. 669.) Unless the licentiate timely requests preparation of the administrative record, that period begins on "the last day on which reconsideration can be ordered [by the Agency]." (Gov. Code, § 11523; cf. *Morton v. Board of Registered Nursing* (1991) 235 Cal.App.3d 1560, 1567.) Williams contends, however, that these deadlines do not apply because he was never served with the 1996 accusation.

Even, however, if the 1996 accusation was not properly served, an attack on the default decision must be made, as Williams concedes, within a reasonable time after his discovery of the decision. (Cf. *Weitz v. Yankosky* (1966) 63 Cal.2d 849, 856 ["One moving in equity to set aside a default judgment must act diligently in making his

6

motion"]; *Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1444 [motion to vacate a judgment entered against a defendant who was not validly served with a summons is timely if made within a reasonable time].) Here, Williams admits that he was informed of the Board's default decision no later than 1998. Even if that discovery occurred the last day of 1998, more than 14 years elapsed before he filed the petition in this case. He offers no excuse for the delay. In light of this passage of time, Williams's challenges to the 1997 default decision is untimely.

> 2. *Disqualification of Robert Sachs and Glenn Mitchell*

Williams contends that Board members Robert Sachs and Glenn Mitchell should have been disqualified. The trial court rejected this claim based upon the lack of evidentiary support. We agree.

A judgment is presumed correct and the appellant has the burden to demonstrate error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Williams has not cited any evidence in the record to support his claim of prejudice. Mere allegations and speculation are not enough.

> 3. *Breach of Duty to Report Williams's License Status Accurately.*

Williams asserts that the website maintained by the Board continued to report that his license was suspended long after the suspension had been lifted. As a result, he contends, prospective employers who accessed the website to check his status must have decided not to employ him. The lack of employment offers forced Williams to accept employment at the Lemon Grove clinic, which ultimately led to his involvement with the criminal activity there and his convictions for Medicare fraud.

Leaving aside the questionable nature of Williams's claim, it is time barred. The longest statute of limitations that could apply is four years (Code Civ. Proc., § 343), making this claim at least 3 years late.[3]

---

[3] While this appeal was pending, Williams filed in this court a motion for leave to amend his complaint "to bring the Department of Consumer Affairs and the State of California into this

7

**DISPOSITION**

The judgment is affirmed.  The Board shall recover its costs on appeal.

NOT TO BE PUBLISHED.


                                                ROTHSCHILD P. J.
We concur:



        CHANEY, J.



        JOHNSON, J.

---

action as party defendants."  The motion was made on the ground that the new defendants were responsible for the failure to accurately report the status of his license.  Because Williams's claim is time-barred regardless of which entity was responsible for the website, the motion is denied.

8